# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **FRANK MALDONADO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **JO ANNE B. BARNHART,** | § | **SA-05-CA-0468 RF (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   W. Royal Furgeson
      United States District Judge

## I. Introduction

Plaintiff Frank Maldonado seeks review and reversal of the administrative denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") by the Administrative Law Judge ("ALJ") on March 25, 2002.[1]  Plaintiff contends that ALJ Bernard J. McKay's conclusion, that plaintiff was not under a disability at any time through the date of the decision, is not supported by substantial evidence of the record. Specifically, plaintiff contends that the ALJ erred (1) in finding that his impairments do not meet a Medical Listing; (2) in improperly considering evidence of his alcohol and drug abuse; and (3) by failing to propound a hypothetical to the vocational expert that incorporated all the limitations arising from his impairments.[2]  For these reasons, plaintiff requests that the Court reverse the

---

[1] Docket Entry 3.  **See also** Administrative Transcript ("Transcript") at 19-28.

[2] Docket Entry 11.

ALJ's decision and order the entry of a finding of disability, or in the alternative, remand the case for further factual development.[3]

After considering plaintiff's brief in support of his complaint,[4] defendant's brief in support of the Commissioner's decision,[5] plaintiff's reply brief,[6] the transcript of the Social Security Administration ("SSA") proceedings, the pleadings on file, the applicable case authority, relevant statutory and regulatory provisions, and the entire record in this matter, it is my recommendation that plaintiff's request for relief be **DENIED**.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. Jurisdiction

The District Court has jurisdiction to review the final decision of the Commissioner of Social Security as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. Administrative Proceedings

Based on the record in this case, plaintiff fully exhausted his administrative remedies prior to filing this action in federal court.  Plaintiff filed an application for SSI and DIB on

---

[3] Docket Entries 3, 11, and 14.

[4] Docket Entry 11.

[5] Docket Entry 13.

[6] Docket Entry 14.

February 16, 1994, alleging a disability beginning April 14, 1992.[7]  The SSA denied plaintiff's application for benefits on May 31, 1994,[8] and denied his request for reconsideration on May 11, 1995.[9]

Plaintiff requested a hearing before an ALJ,[10] and the hearing was held on November 4, 1997, in San Antonio, Texas.[11]  Chester Brown represented plaintiff, who was not present at the hearing.[12]  Vocational expert ("VE") Billy Brown and medical expert ("ME") Frank Parades appeared at the administrative hearing,[13] and ME Parades testified.[14]  Over objection by plaintiff's attorney, the ALJ ruled that plaintiff was not an essential person to the hearing, and he conducted the hearing in plaintiff's absence.[15]

On September 24, 1998, ALJ McKay issued his decision in which he concluded that plaintiff was not under a "disability" as defined by the Social Security Act ("the Act"), at any time through the date of the decision.[16]  While ALJ McKay found that plaintiff had an affective disorder and personality disorder that met the listed impairments 12.04, 12.08, and 12.09 of

---

[7] Transcript at 92-94.

[8] Transcript at 50.

[9] Transcript at 57-58.

[10] Transcript at 60.

[11] Transcript at 67, 348.

[12] Transcript at 350.

[13] Transcript at 348.

[14] Transcript at 356-376.

[15] Transcript at 353.

[16] Transcript at 40.

Appendix 1, Subpart P. Regulation No. 4, he further found that plaintiff's alcohol and drug dependency were material to the finding of disability; and therefore, plaintiff was not under a disability as defined by the Act.[17]

After receiving the ALJ's unfavorable decision, plaintiff requested review of the hearing decision.[18]  On October 4, 2000, the Appeals Council vacated the hearing decision and remanded the case to the ALJ.[19]  The Appeals Council instructed the ALJ to evaluate plaintiff's impairments, perform the sequential evaluation process a second time, and determine the plaintiff's residual functional capacity ("RFC") without consideration of the effects of drug and alcohol abuse on his ability to work.[20]

ALJ McKay conducted a second administrative hearing on December 11, 2001.[21]  John Heard represented plaintiff, who appeared and testified at the hearing.[22]  Vocational expert ("VE") Jesus Duarte also testified at the hearing.[23]

The plaintiff, who was thirty-one years of age at the December 2001 hearing, testified that he had graduated from high school where he had difficulty with math and attended a special math class.[24]  After graduation, he enrolled in six (6) hours of college courses, but did not complete

---

[17] **Id.**

[18] Transcript at 33 and 73, respectively.

[19] Transcript at  78.

[20] **Id.**

[21] Transcript at 85, 379.

[22] Transcript at 379.

[23] **Id.**

[24] Transcript at 384.

them.[25]  At the time of the hearing, plaintiff was attending the San Antonio College of Medical and Dental Assistants.[26]  Plaintiff explained that he began taking classes in July 2001.  He attended classes five days a week beginning at eight o'clock in the morning and continuing until one and two o'clock in the afternoon.  Plaintiff averred that he was an A student.[27]

Plaintiff testified that he had a criminal record dating back to 1989 and was in prison from October 1996 through March 2001 due to a conviction for possession of cocaine.[28]  Plaintiff stated that he was apprehended with cocaine in his car.[29]  He did not gain any education or work skills while in prison.  He did not perform any jobs while in prison because he got into trouble and was segregated from other inmates.[30]  Plaintiff was in the psychiatric facility while he was incarcerated.[31]

Plaintiff told ALJ McKay that he attempted to take his life "a lot of times."[32]  Under examination by his counsel, he claimed to have attempted suicide more than thirty (30) times.[33]  He testified:

> I've taken medication, overdosed, pumped out my stomach, cut

---

[25] Transcript at 384-385.

[26] Transcript at 389.

[27] Transcript at 390.

[28] Transcript at 385-388.

[29] Transcript at 394.

[30] Transcript at 398.

[31] Transcript at 410.

[32] Transcript at 398.

[33] Transcript at 407.

myself, hung myself, where they actually caught me in the air.[34]

He also drove a vehicle into a wall.[35]

Plaintiff testified that he had been diagnosed with serious psychiatric problems and has taken psychiatric medication since 1992.[36]  He has taken Haldol and Mellaril in the past, but stopped because he did not have the funds to continue purchasing the medication.[37]  At the time of the hearing, plaintiff was taking Risperal and Wellbutrin.[38]

Plaintiff denied using illegal drugs or abusing alcohol.  He admitted consuming alcohol when he was eighteen or nineteen years of age.[39]  He would attend parties with kegs and drink vodka and tequila.  Plaintiff testified that he stopped consuming alcohol when he got married.[40]  However, he admitted to consuming wine on holidays or other special occasions.  Plaintiff denied using cocaine although he was convicted for possession of 1.4 grams of cocaine.[41]

After his release from prison, plaintiff lived with his parents.[42]  His regular daily activities included attending classes in the morning and staying at his parents' house in the afternoon.  He had no responsibilities to do anything around the house.  Plaintiff used his father's vehicle to

---

[34] Transcript at 407.

[35] **Id.**

[36] Transcript at 405.

[37] Transcript at 406.

[38] Transcript at 409.

[39] Transcript at 400.

[40] Transcript at 402.

[41] Transcript at 400.

[42] Transcript at 389.

drive to and from classes, but was not otherwise allowed to use the vehicle.[43]

Plaintiff's past relevant work included employment as a security guard, film splicer, and nurse's aide caring for the elderly.[44]  After being released from prison, plaintiff worked in a grocery store cleaning the meat department.[45]  Plaintiff worked from three o'clock to eight or nine o'clock, and stayed with the job for four to five months.[46]  Plaintiff told ALJ McKay that he quit because he "was looking forward to higher pay, and they didn't give it to [him]."[47] Furthermore, his supervisors wanted him to cut meat for them for their personal use, and plaintiff did not feel qualified to do so.  Plaintiff stated that he cut himself and did not feel comfortable using knives.[48]

Plaintiff testified that he still had problems.  He gets tense and scared and feels uncomfortable around people.  He also has trouble with his memory.[49]  Furthermore, plaintiff testified that he had become upset with his former wife because of a phone conversation and decided to take some pills.  His mother called the emergency medical services, and he was transported to the hospital where his stomach was pumped.[50]

---

[43] Transcript at 401, 402.

[44] Transcript at 428, 429.

[45] Transcript at 412, 413.

[46] Transcript at 413.

[47] Transcript at 413, 414.

[48] Transcript at 415, 419.

[49] Transcript at 422, 423, 426.

[50] Transcript at 424.

ALJ McKay also heard testimony from vocational expert Jesus Duarte.[51]  VE Duarte classified plaintiff's past work experience as a security guard as light, semi-skilled work, and his position as nurse's aide as medium, unskilled.[52]  VE Duarte testified that a person of plaintiff's age, education, and work experience who was moderately limited in the ability to relate to co-workers, moderately limited in dealing with supervisors, and moderately limited in performing stressful jobs could not perform plaintiff's past work.  However, according to the VE Duarte, a person with those attributes could perform light, unskilled work such as a library clerk, an assembler, and a package handler.[53]  Additional limitations to avoid heights and dangerous equipment, and a criminal record for possession of cocaine did not alter the vocational expert's opinion.[54]

Plaintiff's counsel presented VE Duarte with additional nonexertional limitations, and inquired if a person with the additional limitations could retain competitive employment.  VE Duarte opined that the person described might be able to obtain one of the jobs previously identified, but would not be able to retain the employment because of the inability to complete a workday and take orders from a supervisor.[55]

On March 25, 2002, the ALJ issued his decision in which he concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the

---

[51] Transcript at 427-434.

[52] Transcript at 428, 430.

[53] Transcript at 430, 431.

[54] Transcript at 431.

[55] Transcript at 432-434.

date of the decision.[56]  Specifically, ALJ McKay found that plaintiff's impairments did not meet

or medically equal one of the listed impairments of Appendix 1, Subpart P, regulation No. 4.[57]

Furthermore, plaintiff retained the RFC to perform a significant range of work at all levels and

the ability to perform a significant number of light exertional level unskilled jobs.[58]

After receiving notice of the ALJ's unfavorable decision, plaintiff requested review of the

hearing and decision on April 16, 2002.[59]  On April 1, 2005, the Appeals Council

concluded that there was no reason under its rules to review the ALJ's decision, therefore denied

plaintiff's request for review.[60]  Plaintiff commenced the instant action in this court on May 23,

2005.[61]

## IV.  Issue Presented

Is the ALJ's decision that plaintiff was not under a "disability," as
defined by the Act, at any time through the date of the decision,
supported by substantial evidence and does the decision comport
with relevant legal standards?

## V.  Analysis

### A. Standard of Review

---

[56] Transcript at 19-28.

[57] Transcript at 27 at ¶ 4.

[58] Transcript at 28 at ¶¶ 12 and 13.

[59] Transcript at 16 and 15, respectively.

[60] Transcript at 9-11.

[61]  Plaintiff submitted his complaint along with a motion to proceed *in forma pauperis* on May 18, 2005,
Docket Entry 1, which was granted by Order entered on May 23, 2005, Docket Entry 2.  The Clerk of Court filed the
original complaint on May 23, 2005, Docket Entry 3.

In reviewing the Commissioner's decision denying disability insurance benefits, the reviewing court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[62]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[63] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[64]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[65]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[66]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[67]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

---

[62] **Martinez v. Chater**, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[63] **Villa v. Sullivan**, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting **Hames v. Heckler**, 707 F.2d 162, 164 (5th Cir. 1983)).

[64] **Abshire v. Bowen,** 848 F.2d 638, 640 (5th Cir. 1988) (quoting **Hames**, 707 F.2d at 164).

[65] **Martinez**, 64 F.3d at 173.

[66] **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995); **Villa**, 895 F.2d at 1022 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[67] **Martinez**, 64 F.3d at 174.

education and work experience.[68]

### 1. Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not reached

retirement age, has filed an application for benefits, and is under a disability is entitled to receive

disability insurance benefits.[69]   The term "disabled" or "disability" means the inability to "engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months."[70]   A claimant shall be determined to

be disabled only if his or her physical or mental impairment or impairments are so severe that he

or she is unable to not only do his or her previous work, but cannot, considering his or her age,

education, and work experience, participate in any other kind of substantial gainful work which

exists in significant numbers in the national economy, regardless of whether such work exists in

the area in which the claimant lives, whether a specific job vacancy exists, or whether the

claimant would be hired if he or she applied for work.[71]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be

evaluated according to a five-step process.[72]   A finding that a claimant is disabled or not disabled

---

[68] **Id.**

[69]  42 U.S.C. § 423(a)(1).

[70] 42 U.S.C. § 1382c(a)(3)(A).

[71] 42 U.S.C. § 1382c(a)(3)(B).

[72] 20 C.F.R. §§ 404.1520 and 416.920.

11

at any point in the process is conclusive and terminates the Commissioner's analysis.[73]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[74]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[75]  The second step involves determining whether the claimant's impairment is severe.[76]  If it is not severe, the claimant is deemed not disabled.[77]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[78]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[79]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his or her past work.[80]  If the claimant is still able to do his or her past work, the claimant is not disabled.[81]  If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[82]  If the claimant

---

[73] **Leggett v. Chater**, 67 F.3d 558, 564 (5th Cir. 1995).

[74] 20 C.F.R. §§ 404.1520 and 416.920.

[75] **Id.**

[76] **Id.**

[77] **Id.**

[78] **Id.**.

[79] **Id.**

[80] **Id.**

[81] **Id.**

[82] **Id.**

cannot do other work, he or she will be found disabled.  The claimant bears the burden of proof

at the first four steps of the sequential analysis.[83]  Once the claimant has shown that he or she is

unable to perform his or her previous work, the burden shifts to the Commissioner to show that

there is other substantial gainful employment available that the claimant is not only physically

able to perform, but also, taking into account his exertional and non-exertional limitations, able

to maintain for a significant period of time.[84]  If the Commissioner adequately points to potential

alternative employment, the burden shifts back to the claimant to prove that he or she is unable to

perform the alternative work.[85]

**B. Findings and Conclusions of the ALJ**

In this case, ALJ McKay reached his decision at step five of the evaluation process.  At

step one, the ALJ found that after the alleged onset of disability, plaintiff had been employed as a

"clean up" worker in a meat market between June 2001 and October 2001.  However, based on

the short duration of the work activity, the ALJ determined that the work did not constitute

substantial gainful employment.[86]  ALJ McKay then concluded at step two that plaintiff had an

impairment or combination of impairments (depression and a personality disorder), which was

severe.[87]  The ALJ noted that plaintiff had a history of drug and alcohol abuse, but the abuse

stopped upon his incarceration for cocaine possession in October 1996, and he has not abused

---

[83] **Leggett,** 67 F.3d at 564.

[84] **Watson  v. Barnhart**, 288 F.3d 212, 217 (5th Cir. 2002).

[85] **Anderson v. Sullivan**, 887 F.2d 630, 632-33 (5th Cir. 1989).

[86] Transcript at 21.

[87] Transcript at 23, 27 at ¶ 3.

drugs since his release from prison.[88]  At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment in Appendix 1, Subpart P. Regulation No. 4.[89]  At step four, the ALJ found that although plaintiff had been intermittently employed at various jobs for short periods of time, "his history of criminal convictions, periods of incarceration, and lack of steady employment has precluded him from performing any one job at the level of substantial gainful activity as required by the regulations."[90]  Consequently, plaintiff did not have any relevant past employment.[91]  At step five, the ALJ held that given plaintiff's age (defined as a younger individual),[92] education (high school education),[93] vocational experience (no transferable skills from previous work),[94] and exertional and nonexertional limitations,[95] plaintiff could perform work as a library clerk, an assembler, and a packager.[96]  Based on the foregoing, ALJ McKay concluded that plaintiff was not under a disability.[97]

## C. Plaintiff's Allegations of Error

Plaintiff claims that the ALJ erred in determining that plaintiff was not under a disability

---

[88] Transcript at 23.

[89] Transcript at 24, 27 at ¶ 4.

[90] Transcript at 26.

[91] Transcript at 26, 28 at ¶ 8.

[92] Transcript at 26, 28 at ¶ 9.

[93] Transcript at 26, 28 at ¶ 10.

[94] Transcript at 26, 28 at ¶ 11.

[95] Transcript at 26, 27 at ¶ 7.

[96] Transcript at 27, 28 at ¶ 13.

[97] Transcript at 27, 28 at ¶ 14.

as defined by the Act, and that the determination is not supported by substantial evidence.  In particular, plaintiff contends that the ALJ erred in finding that plaintiff's impairments do not meet a Medical Listing, improperly considered evidence of plaintiff's alcohol and drug abuse, and failed to incorporate all the limitations arising from plaintiff's medical impairments into the hypothetical that he presented to the vocational expert.

**1. Did the ALJ properly evaluate plaintiff's mental impairments in light of the evidence of plaintiff's alcohol and drug abuse?**

Plaintiff's first two assignments of error address the ALJ's findings concerning the severity of plaintiff's mental impairments.  Plaintiff notes that in his decision issued September 24, 1998, ALJ McKay found that plaintiff's impairments met Listings 12.04, Affective Disorders, and 12.08, Personality Disorders.  Plaintiff argues that the ALJ's determination in the March 2002 decision, that his impairments do not meet these Listings, is not supported by substantial evidence.  Furthermore, plaintiff alleges that the ALJ did not apply the proper legal standard in evaluating plaintiff's mental impairments and history of drug and alcohol abuse.

Appendix 1, Subpart P, Part 404 of the Regulations contains a list of impairments and their indicators of medical severity that are considered so debilitating as to preclude substantial gainful activity.[98]  In the vernacular of disability law, Appendix 1 is known as the Listings.[99]  The Listings provide a method for an ALJ to take administrative notice of *per se* disability of a claimant with a listed impairment.[100]  For an impairment to meet or medically equal a Listing, the

---

[98] **Washington v. Barnhart**, 413 F.Supp.2d 784, 793 (E.D. Tex. 2006).

[99] **Id.**

[100] **Id.**

impairment must satisfy each of the criteria set forth in the Regulations for that Listing.[101]

The burden of proof is on the plaintiff to "provide and identify medical signs and laboratory findings" that demonstrate that his or her impairment is equivalent to a Listing.[102] If the plaintiff fails to carry his burden, the Court must find the ALJ's determination, that the impairment does not equal a Listing, is supported by substantial evidence.[103]

Affective disorders recognized by Listing 12.04 are characterized by mood disturbances accompanied by manic or depressive syndrome.[104] "Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."[105] An impairment meets or medically equals the level of severity for Listing 12.04 if the impairment meets at least one criterion from paragraph A and at least two criteria from paragraph B or when the impairment meets the requisites of paragraph C.[106]

Personality disorders under Listing 12.08 exist "when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress" and characterize the individual's long-term functioning as opposed to sporadic incidents.[107] An impairment meets the level of severity for Listing 12.08 when the

---

[101] **Selders v. Sullivan**, 914 F.2d 614, 619 (5th Cir. 1990) (citing **Sullivan v. Zebley**, 493 U.S. 521 (1990) and 20 C.F.R. § 404.1526(a)).

[102] **Washington**, 413 F.Supp.2d at 793 (citing **McCuller v. Barnard**, 72 Fed.Appx. 155, 158 (5th Cir.2003); **Selders**, 914 F.2d at 619; and 20 C.F.R. § 404.1526(a) (2005)).

[103] **Id.** (citing **Selders v. Sullivan**, 914 F.2d at 620).

[104] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

[105] **Id.**

[106] **Id.**

[107] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08.

impairment reflects at least one paragraph A criterion and at least three paragraph B criteria.

In his September 1998 decision, ALJ McKay found that plaintiff had an affective disorder and a personality disorder that met the severity of Listings 12.04 and 12.08.  He also found that plaintiff met Listing 12.09, Substance addiction.[108]  In reaching his determination, the ALJ agreed with plaintiff's counsel that plaintiff's depression, personality disorder, and substance abuse affected each other and were so intertwined that a separate consideration of each was impossible.[109]  However, the ALJ concluded that plaintiff's substance abuse was material to his finding of disability, and therefore, plaintiff was precluded by statute from receiving benefits.[110]

Plaintiff requested review of the ALJ's determination that he was precluded from receiving benefits because of his substance abuse.  Plaintiff argued to the Appeals Council that he was denied his procedural rights because the ALJ conducted the hearing without his presence.  He further argued that his substance abuse was not a material factor in his case.[111]   The Appeals Council reviewed the September 1998 decision and concluded that the ALJ erred by failing to determine plaintiff's RFC without consideration of the affects of drug and alcohol abuse on his ability to work.  Further, the Appeals Council directed the ALJ to offer the claimant an opportunity for a hearing and take further action to complete the administrative record.[112]

If the Commissioner determines that the individual is under a disability, and there is

---

[108] Transcript at 40 at ¶ 3.

[109] Transcript at 39-40.

[110] Transcript at 39.

[111] Transcript at 74-75.

[112] Transcript at 78-79.

medical evidence in the record of drug addiction and/or alcoholism, a determination must be made as to whether either is a material factor contributing to the disability.[113]  The key factor to be examined is whether the individual would still be disabled if he or she stopped abusing drugs and/or alcohol.[114]  The Commissioner evaluates the individual's physical and mental limitations that formed the basis of the initial finding of disability to determine what limitations would remain if the individual stopped using drugs or alcohol and whether those limitations would be disabling.  If the remaining limitations are not disabling, then the individual's drug or alcoholism is a contributing material factor to the disability determination; if the remaining limitations are disabling, the individual is disabled independent of the drug addiction or alcoholism and the drug addiction or alcoholism is not a contributing material factor to the disability.[115]  The burden is on the claimant to show that his remaining impairments are disabling.[116]  An individual cannot be considered disabled and receive benefits if drug addiction or alcoholism is a contributing material factor to the determination of disability.[117]

In this case, the ALJ complied with the remand Order by conducting a thorough *de novo* analysis of the medical evidence describing plaintiff's impairments and determining that plaintiff's impairments are not disabling.  The ALJ considered plaintiff's medical history noting that plaintiff had a lengthy history of mental illness dating back to at least September of 1990,

---

[113] 20 C.F.R. §§ 404.1535(a), 416.935(a).

[114] 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

[115] 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

[116] **Brown v. Apfel**, 192 F.3d 492, 498 (5th Cir. 1999).

[117] 42 U.S.C. § 423(d)(2)(C).

when he was hospitalized after engaging in self-injurious behavior and homicidal ideation towards others, and continuing through his incarceration where psychiatrists evaluated him for the Texas Department of Criminal Justice ("TDCJ").  The ALJ specifically noted the records and findings of the Center for Health Care Services, Thomas Harold Williams, Jr. M.D., Southwest General Hospital, and the psychiatric evaluation performed by of the TDJC.[118]  Most importantly, the ALJ was able to personally question and evaluate the plaintiff at the second hearing.

The ALJ acknowledged that plaintiff had a history of drug abuse, but explained that the record showed that plaintiff stopped abusing drugs and alcohol after his incarceration.[119]  He further explained that the TDJC records suggested that plaintiff engaged in combative and destructive behavior to gain concessions from his jailers.  Notably, a July 1997 mental status evaluation showed plaintiff to be calm and coherent, his mood and affect were normal, and he was oriented in time, place, person, and recent events.[120]  Based on the entire record, the ALJ found that plaintiff had the severe impairments of depression and personality disorder.  However, the ALJ further found that plaintiff's impairments did not rise to the level of Listing 12.04 or 12.08.  ALJ McKay explained that although plaintiff experienced three of the "B" criteria of the Listings due to his mental impairments, the degree of severity did not meet the "marked" level required to meet the Listings.[121]

---

[118] Transcript at 22-23.

[119] Transcript at 23.

[120] **Id.**

[121] Transcript at 24.

Plaintiff complains that the ALJ reached the opposite conclusion in his September 1998 decision, and therefore, the ALJ impermissibly altered his step three factual findings. Essentially, plaintiff argues that the ALJ is precluded from reviewing and altering his factual findings on remand.  However, plaintiff's argument is contrary to the accepted rule.

The Social Security regulations provide when the Appeals Council remands a case, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."[122]  "Preclusion principles, however, do not 'bind the ALJ to his earlier decision. To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate.'"[123]

In this case, the ALJ reviewed the record in detail in light of the remand Order.  Unlike his previous decision, the ALJ made specific reference to plaintiff's prison medical records and considered them accordingly.[124]  Furthermore, the ALJ had the opportunity at the second hearing to question plaintiff concerning his impairments.  Plaintiff did not oppose offering his testimony, having argued for reconsideration based on his non-availability at the first hearing.  Nor did he offer any objections to the documents offered for admission at the December 2001 hearing. Accordingly, the ALJ's consideration of additional evidence and his re-evaluation of his findings of facts are consistent with the remand Order, and his findings that plaintiff did not meet the

---

[122] 20 C.F.R. § 404.977(b).

[123] **Miller v. Barnhart**, No. 05-6248,  2006 WL 895503, *3 (10th Cir. Apr. 7, 2006) (quoting **Campbell v. Bowen**, 822 F.2d 1518, 1522 (10th Cir.1987)); **see also Houston v. Sullivan**, 895 F.2d 1012, 1015 (5th Cir.1989) ("Once the case was remanded to the ALJ to gather more information about the extent of [claimant's] disability, the ALJ was free to reevaluate the facts.").

[124] Transcript at 23.

requirements of Listings 12.04 and 12.08 are supported by substantial evidence in the record.

Plaintiff further argues that the ALJ failed to comply with the social security regulations because he considered plaintiff's substance abuse prior to making a finding that plaintiff was disabled.[125]  Plaintiff contends that the ALJ improperly considered plaintiff's substance abuse by finding that plaintiff's substance abuse is in remission, does not impose significant limits on his ability to work, and does not constitute a severe impairment.[126]

However, the passage cited by plaintiff in his brief[127] is more appropriately considered in the context of the ALJ's prior finding that plaintiff's impairments met the severity of Listing 12.09 - Substance addiction disorders.  Substance addiction disorders under Listing 12.09 involve behavioral or physical changes that are "associated with the regular use of substances that affect the central nervous system."[128]  An impairment meets the level of severity for Listing 12.09 if any one of the nine listed criteria are satisfied.[129]

While in his first decision, the ALJ determined that plaintiff also met Listing 12.09, after reviewing the medical evidence on remand, ALJ McKay determined that plaintiff was not abusing substances during or after his incarceration.  He found that based on the entire record plaintiff did not have a drug or alcohol addiction.  The ALJ then proceeded to continue with the

---

[125] **See Oettinger v. Barnhart**, No. SA-01-CA-0801,  2002 WL 31422308, *5 (W.D. Tex. Sept. 4, 2002) (noting that drug and alcohol addiction only become an issue after a finding of disability is made).

[126] Docket Entry at 11 at 8.

[127] "Thus, the Administrative Law Judge finds that the claimant's history of drug and alcohol abuse is in remission and does not currently impose significant limitations on the claimant's ability to perform basic work activities."  Transcript at 23.

[128] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09.

[129] **Id.**

sequential analysis mandated by the Appeals Council.

Based on the foregoing, the ALJ did not improperly consider plaintiff's alcohol and substance abuse.  The ALJ properly followed the remand order and applied the appropriate legal standards.  His finding that plaintiff was not disabled through the date that he was last insured is based on substantial evidence.

### 2. Did the ALJ fail to incorporate all the limitations arising from plaintiff's impairments into the hypothetical that he posed to the vocational expert?

Plaintiff contends that the ALJ did not include all of plaintiff's relevant limitations as determined by the State Agency Medical Consultants into the hypothetical question that the ALJ propounded to the vocational expert.  Defendant responds that the ALJ incorporated all the credible limitations that he found plaintiff to have into the hypothetical question.

The rule in the Fifth Circuit is that a "hypothetical question to a VE is deemed defective and in error unless (1) the assumptions reasonably incorporate all of the disabilities recognized by the ALJ, and (2) the claimant is afforded the opportunity to correct deficiencies in the ALJ's question."[130]

In this case, ALJ McKay presented the VE with a hypothetical individual with all of the impairments that he found plaintiff to have.  The hypothetical individual had plaintiff's age, education, work history experience along with moderate limitation on working with others or working in a group, moderate limitation on dealing with supervisors, and moderate limitation on stressful work.  In short, the ALJ described an individual who functions better when working

---

[130] **Johnson v. Barnhart**, 285 F.Supp.2d 899, 915 (S.D. Tex. 2003) (citing **Boyd v. Apfel**, 239 F.3d 698, 707 (5th Cir. 2001); **Bowling v. Shalala**, 36 F.3d 431, 437 (5th Cir. 1994)).

alone.[131]

The impairments found by the ALJ are supported by substantial evidence in the record. In assessing plaintiff's RFC, the State Agency Medical Consultant, Dr. Denny, noted that plaintiff had the ability to understand and follow simple instructions, to adequately interact with co-workers and superiors, and to adapt to his working environment.[132]  Plaintiff was not significantly limited in his ability to maintain attention and concentration for extended periods, understand detailed instructions, sustain ordinary routine without special supervision, and make simple work related decisions.[133]  Furthermore, plaintiff demonstrated his ability to work by himself when he worked cleaning the meat department at the La Fiesta grocery store.

VE Duarte opined that the hypothetical described by the ALJ could not perform plaintiff's prior relevant work, but could work as a library clerk, an assembler, and a hand packager.[134]  After the vocational expert offered his opinion, the ALJ gave plaintiff's representative the opportunity to question the vocational expert and provide additional limitations to the hypothetical.[135]  After considering the additional limitations VE Duarte opined that the hypothetical individual could obtain the jobs he identified, but might not be able to retain the job because of his inability to complete a workday or take orders from a supervisor.[136]

However, as explained previously, the ALJ was not obligated to incorporate any

---

[131] Transcript at 430.

[132] Transcript at 136.

[133] Transcript at 134.

[134] Transcript at 431.

[135] Transcript at 432-433.

[136] Transcript at 432-434.

additional limitations that he did not find affected plaintiff's ability to perform work and that were not supported by the record.  The ALJ explained that plaintiff's work in the grocery store meat market along with his "A student" college course work contradicted an assertion that plaintiff was unable to complete a work day or follow a supervisor's direction.  Furthermore, the ALJ's hypothetical expressly described a person who worked better alone.

In conclusion, ALJ McKay's determination of plaintiff's limitations is supported by substantial evidence.  The ALJ properly determined plaintiff's RFC and incorporated his nonexertional limitations into the hypothetical question that he presented to the vocational expert.

## VI.  <u>Recommendation</u>

Based on the foregoing, I recommend that plaintiff's request for relief be **<u>DENIED</u>**, his complaint (Docket Entry 3) **<u>DISMISSED</u>**, and the decision of the Commissioner **<u>AFFIRMED</u>**.

## VII. <u>Instructions for Service and Notice of Right to Object/Appeal</u>

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[137]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate**

---

[137] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

Judge.   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.   A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[138]   Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[139]

**SIGNED** on August 19, 2006.


NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[138] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

[139] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).